AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>**LUIS ALBERTO PATINO LINARES**<br>and<br>**GREGORI JERSON MENDEZ PALACIOS**<br><br>_____<br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.<br>20-6363-SNOW |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 15, 2020 _____ in the county of _____ Broward _____ in the
_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Smuggling Goods from the United States |
| 18 U.S.C. § 922(g)(5) | Alien in Possession of Firearms |
| 31 U.S.C. § 5332 | Bulk Cash Smuggling Out of the United States |

This criminal complaint is based on these facts:

See attached Affidavit in Support of Criminal Complaint.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Jared Rine, Special Agent, HSI
_Printed name and title_

Sworn to and subscribed before me telephonically.

Date:  August 16, 2020

_____
_Judge's signature_

City and state:  Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jared Rine, being duly sworn, do hereby depose and state:

1.       I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since April of 2003.  I have participated in numerous criminal investigations involving the export of merchandise, items, or articles contrary to law or regulation of the United States.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 18, 19 and 31 of the United States Code.

2.       The facts contained in this Affidavit are based on my personal knowledge and information provided to me by other law enforcement officers.  This Affidavit is being submitted for the limited purpose of establishing probable cause that Luis Alberto PATINO LINARES (PATINO LINARES) and Gregori Jerson MENDEZ PALACIOS (MENDEZ PALACIOS) did knowingly attempt to smuggle firearms and ammunition from the United States, in violation of Title 18, United States Code, Section 554; and did illegally possess firearms and ammunition in violation of Title 18, United States Code, Section 922(g)(5)(B): and that MENDEZ PALACIOS, with intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316, did knowingly conceal more than $10,000 in currency and other monetary instruments on his person and in his conveyances, articles of luggage, merchandise, and other containers, and did attempt to transport such currency from a place inside the United States to a place outside of the United States, all in

violation of 31 United States Code, Section 5332. The facts set forth herein do not constitute all the facts known to law enforcement officers regarding this matter.

## RELEVANT STATUTES

3.      Title 18, United States Code, Section 554 (Outbound Smuggling), makes it a crime to fraudulently or knowingly export firearms and ammunition from the United States: "Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned for not more than 10 years, or both."

4.      Title 18, United States Code, Section 922(g) (5), in pertinent part, makes it a crime for an alien who has been admitted to the United States under a nonimmigrant visa to (i) ship or transport in interstate or foreign commerce, any firearm or ammunition; (ii) possess in or affecting commerce, any firearm or ammunition; and (iii) receive any firearm or ammunition which has been shipped or transported in interstate commerce.

5.      Title 18, United States Code, Section 5332 ("Bulk Cash Smuggling into or out of the United States"), in pertinent part, makes it a crime for any person with the intent to evade a currency reporting requirement to "knowingly conceal more than $10,000 in currency or other monetary instruments on the person of such individual on in any conveyance, article of luggage, merchandise,

2

or other container, and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside the United States...." Concealment on a person includes luggage, backpack, or other container carried by such person.

### FACTS ESTABLISHING PROBABLE CAUSE

6.      On August 15, 2020, PATINO LINARES, a Venezuelan National, and MENDEZ PALACIOS, a Venezuelan National, attempted to depart the United States from the Fort Lauderdale-Hollywood International Airport, General Aviation Facility (GAF) aboard a 1986 Learjet 55 B, serial number 129, tail number YV3441 ("Aircraft YV3441"), which is registered in Venezuela.  At 0935 hours, MENDEZ PALACIOS filed a flight plan from KFLL (Fort Lauderdale Hollywood International Airport) to TVSA (Argyle International Airport in St. Vincent and the Grenadines). From my training and experience, I know that pilots have filed flight plans to third party countries to avoid detection of their ultimate destinations to avoid scrutiny of law enforcement authorities.[1]

7.      Aircraft YV3441 departed the hanger, obtained fuel at the Jetscape hanger and started to taxi to the runway.[2]  MENDEZ PALACIOS, the pilot of the aircraft, requested clearance from the control tower for taxi to the runway.   At approximately 1330 hours, United States Customs and Border Protection (CBP) Officers referred the private aircraft for inspection at the Customs area located at the GAF. The air traffic control tower advised Aircraft YV3441 to report to the Customs area at located at the GAF.  At this time, rather than proceeding to the Customs area as instructed,

---

1. As set forth below, during a post-*Miranda* interview, PATINO LINARES stated that the aircraft was headed to Venezuela as its ultimate destination.

2. Jetscape is a business that provides two private terminals for general aviation traffic, aircraft fueling services, and aircraft storage facilities at Ft. Lauderdale-Hollywood International Airport.

MENDEZ PALACIOS turned the aircraft around back to Jetscape and parked in front of the hanger. MENDEZ PALACIOS exited the aircraft and drove his vehicle to the Customs area at the GAF.

8.      MENDEZ PALACIOS arrived at the Customs area at the GAF and was asked where his plane was located. MENDEZ PALACIOS stated to CBP that Aircraft YV3441 was located back at Jetscape. At this time, CBP and FAA drove to Jetscape to inspect the aircraft. MENDEZ PALACIOS remained at the GAF and was asked by CBP to declare any currency or goods that he was exporting from the United States. MENDEZ PALACIOS stated to the CBP officers that he was transporting approximately $8,000 of U.S. currency to Venezuela from the United States. CBP officers observed large bundles of U.S. currency in MENDEZ PALACIOS' backpack and conducted a currency verification count which established that MENDEZ PALACIOS was carrying approximately $18,000 of U.S. currency and an endorsed check for approximately $2,618.53 dollars. CBP officers also discovered approximately $1,500 of U.S. Currency bundled in the private aircraft. This inspection resulted in the discovery of approximately $20,000 of undeclared U.S. currency.

9.      Upon arrival to the aircraft to conduct the inspection, an FAA Inspector approached the Aircraft YV3441 and witnessed PATINO LINARES near the aircraft, along with a ground crew from Jetscape, removing boxes from the aircraft. The FAA Inspector requested document related to a safety inspection. PATINO LINARES stated that he did not speak English. The FAA Inspector asked PATINO LINARES in Spanish for documents related to a safety inspection. Again, PATINO LINARES stated that he did not speak English. At this time, CBP officers arrived on scene and witnessed the ground crew unloading the private aircraft. CBP inspected the boxes that were offloaded and discovered cases of ammunition and firearms. CBP observed approximately 50 or more boxes that had been removed from the aircraft and witnessed a Jetscape ground crew member

4

offload a .50 Cal Barrett sniper rifle from the aircraft. At this time, CBP ceased the offload. Upon inspection of the Aircraft YV3441, CBP officers observed that the aircraft was fully loaded, from the cockpit back to the lavatory, with cases and boxes of weapons, ammunition and household goods.

10.     Upon further inspection, it was established the cargo that had been contained within Aircraft YV3441 included approximately eighty-two firearms of various types and calibers, including approximately eighteen (18) rifles, six (6) shotguns, and fifty-eight (58) pistols. Included among the rifles was the Barrett .50 caliber sniper rifle. Also included within the cargo that had been contained within the aforesaid aircraft were approximately 63,000 rounds of ammunition of various makes and caliber, body armor, and a firearm silencer/suppressor.

11.     PATINO LINARES was transported to the GAF Customs area. HSI Special Agents responded to conduct an interview of PATINO LINARES and MENDEZ PALACIOS. PATINO LINARES and MENDEZ PALACIOS were advised of their *Miranda* rights, verbally and in writing.

12.     PATINO LINARES waived his *Miranda* rights and agreed to speak with law enforcement officers. PATINO LINARES, the co-pilot of Aircraft YV3441, stated that, while in the South Florida area with-in the past three (3) months, he and the pilot, MENDEZ PALACIOS, collectively purchased firearms, ammunition, body armor and a suppressor. PATINO LINARES stated that these items were purchased at the direction of MENDEZ PALACIOS. PATINO LINARES stated that MENDEZ PALACIOS provided the funds that were used as payment for the firearms, ammunition, body armor and suppressor. PATINO LINARES stated that, during that time frame, he and MENDEZ PALACIOS were residing together in an apartment in Coral Springs, Florida. PATINO LINARES stated that he and MENDEZ PALACIOS acquired these firearms, silencer/suppressor and ammunition from private sales set up on the internet, along with purchases

from some retail locations throughout the South Florida area.  PATINO LINARES stated that, on August 14 and 15, 2020, he and MENDEZ PALACIOS transported the above-described firearms and ammunition from the apartment in Coral Springs, Florida and loaded it onto the aforesaid aircraft for the purpose of exporting those items from the United States to Venezuela.  PATINO LINARES, the co-pilot, stated that, after the plane had been referred to the Customs area while taxiing toward takeoff, MENDEZ PALACIOS instead returned to the Jetscape hanger and told PATINO LINARES to unload the plane.

13.     The records of the U.S. Immigration and Customs Enforcement indices reflect that both PATINO LINARES and MENDEZ PALACIOS are currently in the United Sates pursuant to B1/B2 visas.  The B1/B2 visa is a non-immigrant visa issued to a person who wants to enter the United States temporarily for business, for tourism, or for a combination of both purposes.  These are non-immigrant visas that prohibit PATINO LINARES and MENDEZ PALACIOS from shipping or transporting, in interstate or foreign commerce, or from possessing in or affecting commerce, any firearm or ammunition, pursuant to Title 18, United States Code, Section 922(g)(5)(B).

14.     The events described above took place in Broward County, Florida, which is within the Southern District of Florida.  Based upon the foregoing, I submit that there is probable cause to believe that PATINO LINARES and MENDEZ PALACIOS, did knowingly and willfully attempt to smuggle goods from the United States, specifically (i) firearms and ammunition, in violation of Title 18, United States Code, Section 554, and (ii) bulk cash in the form of U.S. currency with the intent to evade currency reporting requirements; and (2) did illegally possess firearms and ammunition, in violation of Title 18, United States Code, Section 922(g)(5)(B).  Moreover, in addition to the outbound smuggling violations, I submit that there is additional probable cause to believe that

MENDEZ PALACIOS, with intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316, did knowingly conceal more than $10,000 in currency and other monetary instruments on his person and in his conveyances, articles of luggage, merchandise, and other containers, and did attempt to transport such currency from a place within the United States to a place outside of the United States, all in violation of Title 31, United States Code, Section 5332.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jared Rine, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me telephonically this 16th day of August, 2020.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

7